**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

JAMES LEE FRANKLIN, JR.,
and ADDIE CHRISTINE FRANKLIN,

      Plaintiffs,

v.

      Case No. 3:25-CV-361-NJR

LAKEVIEW LOAN SERVICING, LLC,

      Defendant.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiffs James Lee Franklin, Jr., and Addie Christine Franklin ("Plaintiffs"), proceeding *pro se*, initiated this civil action against Defendant Lakeview Loan Servicing, LLC ("Lakeview"), on March 18, 2025. (Doc. 3). The Court dismissed Plaintiffs' Complaint (Doc. 3) without prejudice for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on January 7, 2026. (Doc. 28). Plaintiffs then filed an Amended Complaint (Doc. 31), which Lakeview has again moved to dismiss for failure to state a claim (Doc. 32). For the reasons set forth below, the Court grants in part and denies in part Lakeview's Motion to Dismiss Plaintiffs' Amended Complaint.

### BACKGROUND

Plaintiffs James and Addie Franklin obtained a VA-backed mortgage loan to purchase a home on April 6, 2021. (Doc. 29 ¶ 10). Lakeview was the loan servicer on their mortgage loan. (*Id.* ¶ 14). As the loan servicer, Lakeview exercised control over escrow administration, escrow calculations, monthly payment demands, payment processing, and default determinations. (*Id.* ¶ 15).

After closing, Plaintiffs added their church entity to the property's title for tax exemption purposes. (*Id.* ¶ 11). The property tax exemption became effective July 12, 2021. (*Id.* ¶ 12). Plaintiffs provided Lakeview with documentation confirming the property's tax exempt status. (*Id.* ¶ 13). Plaintiffs claim that, despite this notice, Lakeview continued to assess and collect property taxes that were not legally owed. (*Id.* ¶ 16). By adding improper tax charges to Plaintiffs' escrow account, Lakeview artificially inflated the escrow balance due, and Plaintiffs' monthly payment ballooned to $6,000 to $8,000 per month. (*Id.* ¶ 17). Over a period of two years, Plaintiffs paid approximately $48,000 in improper property tax charges, which they allege is a substantial overpayment. (*Id.* ¶ 19).

Plaintiffs claim that they attempted to make the correct monthly mortgage payment, approximately $2,200 to $2,500, through Lakeview's online payment portal, but Lakeview rejected the payments and refused to accept anything less than the inflated amounts. (*Id.* at ¶¶ 20-21). They also attempted to contact Lakeview more than 100 times by phone, mail, and online communications to correct the escrow error, but Lakeview failed to correct the error or properly administer the escrow account. (*Id.* ¶ 22-23).

After Plaintiffs defaulted on their loan, Lakeview initiated foreclosure proceedings. (*Id.* ¶ 24). Although the foreclosure "was not completed," Plaintiffs claim they suffered substantial damages including harm to their credit, legal expenses, emotional distress, and loss of other property interests. (*Id.* ¶ 26).

On the basis of these allegations, Plaintiffs assert Lakeview violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, because it failed to properly administer their escrow account. (*Id.* ¶ 27). Specifically, Plaintiffs claim Lakeview charged escrow amounts for taxes not owed, failed to correct known errors, rejected correct payments,

and, as a result, caused Plaintiffs actual damages. (*Id.* ¶ 28-29). Plaintiffs further claim Lakeview is liable for fraudulent misrepresentation under Illinois law because it knowingly made false representations regarding Plaintiffs' property tax obligations and the balance of their escrow account. (*Id.* ¶¶ 30-36). Alternatively, Plaintiffs allege unjust enrichment in that Lakeview retained payments for taxes not legally owed. (*Id.* ¶¶ 37-38). As relief, Plaintiffs seek $17,000,000 in compensatory damages, as well as punitive damages, statutory damages, costs, and interest.

Lakeview has moved to dismiss the Amended Complaint, arguing that Plaintiffs have again failed to state a claim under RESPA, that they have neither met the heightened pleading requirements to state a claim for fraud nor plausibly alleged fraudulent misrepresentation, and that Plaintiffs' unjust enrichment claim fails alongside their other claims.

## LEGAL STANDARD

When reviewing a motion to dismiss under Rule 12(b)(6), the Court must consider whether the complaint states a claim for relief that is "plausible" on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff need not plead detailed factual allegations, but must provide more than "a formulaic recitation of the elements;" conclusory statements are not enough to support causes of action on their own. *Twombly*, 550 U.S. at 570; *see also Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 645 (7th Cir. 2022) ("all a complaint must do is state a plausible narrative of a legal grievance that, if proved, would entitle the plaintiff to relief").

## DISCUSSION

### I.    Real Estate Settlement Procedures Act (RESPA)

In Count I, Plaintiffs allege Lakeview violated RESPA, 12 U.S.C. § 2605, because it improperly administered their escrow account by charging for taxes not owed, failing to correct errors, and rejecting correct payments. As with the original Complaint, Lakeview argues that Plaintiffs have not and cannot allege a violation of § 2605.

The Amended Complaint fails to specify which section of RESPA Plaintiffs believe Lakeview violated. Subsection (g), however, applies to escrow accounts and provides:

**(g) Administration of escrow accounts**

If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due. Any balance in any such account that is within the servicer's control at the time the loan is paid off shall be promptly returned to the borrower within 20 business days or credited to a similar account for a new mortgage loan to the borrower with the same lender.

12 U.S.C. § 2605(g).

Subsections (k)(1)(C) and (E) may also be relevant. Those provisions state:

**(k) Servicer prohibitions**

**(1) In general**

A servicer of a federally related mortgage shall not—

(C) fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties; . . .

(E) fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to

carry out the consumer protection purposes of this chapter.

12 U.S.C. § 2605(k)(1)(C), (E).

Here, Plaintiffs have alleged that they had a VA loan, and the terms of that loan required them to make payments to an escrow account. However, they have not alleged that Lakeview failed to make such payments in a timely manner or that the loan was paid off and Lakeview failed to promptly return any escrow balance, as would be sufficient to state a claim under § 2605(g). Instead, they argue that Lakeview "continued to assess and collect property taxes that were not legally owed." As a result, Plaintiffs' escrow account balance was artificially inflated.

In its motion to dismiss, Lakeview explains that Madison County, Illinois, assesses taxes—not Lakeview as the loan servicer—and that property taxes in Illinois are paid in arrears in four installments. (Doc. 32). Accordingly, even though Plaintiffs' property became tax exempt in 2021, Plaintiffs still owed their 2020 property taxes, which were billed by Madison County in four installments in 2021. (*Id.*; Doc. 17-3). Plaintiffs were also liable for their 2021 taxes up until the date the property became tax exempt. (*Id.*). Those taxes were billed by Madison County in four installments in 2022. (*Id.*; Doc. 17-3). Thus, although taxes could no longer *accrue* after Plaintiffs' property became tax exempt, Plaintiffs were still liable for the taxes owed prior to the exemption. (*Id.*). Lakeview, through its subservicer, M&T Bank, then paid the Madison County tax bills out of Plaintiffs' escrow account.

In response, Plaintiffs aver that Lakeview continued to charge, collect, and retain escrow funds for future property taxes that would never become due. They assert that the sellers of the house provided a property tax credit at closing, which was sufficient to cover property taxes beyond closing. As a result, the only property taxes that could have accrued

would have been for less than two months in 2021. Nevertheless, Lakeview continued to calculate the property taxes as if they were due, which inflated Plaintiffs' mortgage payment and led to the foreclosure proceedings. Plaintiffs argue that RESPA specifically governs the administration of escrow accounts, including the duty to properly account for payments, correct known errors, and avoid charging amounts not necessary for payment of taxes and insurance.

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in their favor, the Court finds that they have plausibly alleged a violation of § 2065(k). *See Twombly*, 550 U.S. at 555 (the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Plaintiffs claim that the sellers provided a property tax credit at closing, which should have covered the property taxes nearly until the time the property was designated as tax exempt. When Lakeview continued to charge for taxes, even though they had been paid, Plaintiffs attempted to communicate the error to Lakeview, but Lakeview failed to correct it. At this stage, these allegations are sufficient to state a claim under RESPA.

## II.    Fraudulent Misrepresentation

In Count II, Plaintiffs claim that Lakeview fraudulently misrepresented their property tax obligations.

To state a claim for fraudulent misrepresentation in Illinois, a plaintiff must allege "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance upon the truth of the statement; and (5) damage to the plaintiff resulting from such reliance."

Page 6 of 9

*Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). "Under the heightened federal pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff "alleging fraud . . . must state with particularity the circumstances constituting fraud." *Id.* (quoting *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("This heightened pleading requirement is a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do.")).

Here, Plaintiffs assert that Lakeview "knowingly made false representations that Plaintiffs owed property taxes" from July 2021 through the initiation of foreclosure proceedings, and that these false statements allowed Lakeview to inflate Plaintiffs' escrow calculations, induce payment from Plaintiffs, and justify foreclosure. These allegations are insufficient to state a claim for fraudulent misrepresentation. Plaintiffs still have not identified the specific false statements made by Lakeview.[1] Moreover, Plaintiffs have not adequately alleged that they acted in justifiable reliance on the truth of the statement. "When addressing the issue of justified reliance, Illinois courts have long recognized that 'a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth . . . he cannot be heard to say he was deceived by misrepresentations.'" *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 882 (7th Cir. 2005) (quoting *Elipas Enterprises, Inc. v. Silverstein*, 612 N.E.2d 9, 13 (Ill. App. Ct. 1993)); *see also Newman v. Metro. Life Ins. Co.*, 885 F.3d

---

[1] As the Court noted in its Order entered on January 7, 2026 (Doc. 28), Plaintiffs' initial Complaint attached numerous documents, none of which even mentioned Lakeview. Instead, all correspondence was between Plaintiffs and Lakeview's loan subservicer, M&T Bank. (*See* Doc. 5). Plaintiffs omitted all exhibits from their Amended Complaint.

992, 1003 (7th Cir. 2018) (a consumer's reliance on a statement "is not justifiable if a consumer has reason and opportunity to question the truth of the alleged misrepresentation"). Here, Plaintiffs had access to their mortgage settlement documents, mortgage statements, property tax bills and payments, and mortgage payment history when the allegedly false representations were made regarding taxes owed. Plaintiffs cannot now claim that it was justified for them to rely on Lakeview's statements. Thus, Count II will be dismissed.

### III.    Unjust Enrichment

"Unjust enrichment is not a separate cause of action under Illinois law." *Horist v. Sudler*, 941 F.3d 274, 281 (7th Cir. 2019). In Illinois, "[t]o state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris, Inc.*, 665 F.3d 511, 516 (7th Cir. 2011). "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* at 517.

Here, Plaintiffs claim that Lakeview exercised control over escrow administration, escrow calculations, monthly payment demands, payment processing, and default determinations; that Lakeview added improper property tax charges to their escrow account; and that Lakeview failed to correct the errors despite being contacted more than 100 times by Plaintiffs. As a result, Plaintiffs substantially overpaid on their property taxes. Plaintiffs contend that Lakeview was unjustly enriched in violation of Illinois law when it "retained payments for taxes not legally owed" and that "[r]etention of these funds would be unjust and inequitable." (Doc. 31 at ¶¶ 37-38). The Court finds that these allegations are sufficient

to state a claim for unjust enrichment at this stage of the proceedings.

CONCLUSION

For these reasons, Defendant Lakeview Loan Servicing, LLC's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 32) is **GRANTED in part and DENIED in part**. Count II is **DISMISSED without prejudice**.

A scheduling conference will be set by separate order.

**IT IS SO ORDERED.**

**DATED:    August 4, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**